# United States District Court

**EASTERN** District of **CALIFORNIA**



**FILED**

Oct 20, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*

2021 Chevrolet Silverado 1500 Custom Truck,
VIN: 1GCRWBEK4MZ163537, California license
number 26288D3.

**APPLICATION FOR A WARRANT TO SEIZE
PROPERTY SUBJECT TO FORFEITURE**

CASE NUMBER:   2:21-sw-0809 CKD

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Eastern District of **CALIFORNIA** is subject to forfeiture to the United States of America (*describe the property*):

2021 Chevrolet Silverado 1500 Custom Truck, VIN: 1GCRWBEK4MZ163537, California license number 26288D3.

The property is subject to seizure pursuant to 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), concerning violations of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 1957.

The application is based on these facts:

**See attached affidavit.**

☒ Continued on the attached sheet.

_____
/s/
*Applicant's signature*

Christopher S. Fitzpatrick , Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed telephonically.

October 20, 2021 at 1:00 pm
_____
Date

Sacramento, California
_____
City and State

_____
*Judge's signature*

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

I, Christopher Scott Fitzpatrick, having been duly sworn, state as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application authorizing a seizure warrant for forfeiture of the following asset under Rule 41 of the Federal Rules of Criminal Procedure:

> 2021 Chevrolet Silverado 1500 Custom Truck, VIN: 1GCRWBEK4MZ163537, California license number 26288D3, registered to Devlin Takeoka Hosner ("The Asset").

2.      Based on my training and experience and the facts set forth in this affidavit, I submit there is probable cause that Devlin HOSNER ("HOSNER") and others have sold and distributed illegal narcotics on the dark web and laundered the criminally derived proceeds, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance).  There is probable cause to believe The Asset is proceeds of the sale and distribution illegal narcotics and constitutes proceeds of specified unlawful activity – specifically 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance) and 18 U.S.C. § 1957 (Engaging in Monetary Transaction in Property Derived From Specified Unlawful Activity), and thus is subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

3.      I am a Special Agent of the Department of Treasury, Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been since September 2001.  I am currently assigned to the IRS-CI Sacramento Office and I am charged with investigating drug trafficking and money laundering activities in the Eastern District of California, and elsewhere.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests for federal felony offenses.  Additionally, I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request seizure warrants.

4.      I was trained at a Federal Law Enforcement Training Center located in Glynco, Georgia.  During my training, I received special training in Money Laundering, including but not limited to, Title 18 United States Code Sections 1956 and 1957.  I have also received special training in Specified Unlawful Activities, including but not limited to, Title 21 United States Code Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively.  I have also spoken to and worked with experienced federal, state, and municipal agents and narcotics officers regarding the methods and means employed by drug manufacturers and drug traffickers.

5.      During the course of my employment as an IRS-CI Special Agent, I have participated in numerous criminal investigations.  I have participated in executing numerous Federal and State search warrants involving the aforementioned listed controlled substances, the seizure of narcotics-related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances, and the money laundering of the criminally derived proceeds.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, various types of infiltration, including undercover agents, informants, and cooperating sources.  Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I am

familiar with the laws used by drug traffickers to smuggle and safeguard controlled substances, to distribute, manufacture, and transport controlled substances, and to collect and launder related proceeds.

6.      I am part of the Northern California Illicit Digital Economy ("NCIDE") task force comprised of personnel from the Drug Enforcement Administration ("DEA"), Homeland Security Investigations ("HSI"), the Federal Bureau of Investigation ("FBI"), the United States Postal Inspection Service ("USPIS"), and IRS-CI.  As a function of this task force, investigators regularly purchase narcotics utilizing both digital and fiat currencies, from the persons operating and illegally selling narcotics on the "clear" portion of the internet, from the "dark" portion of the internet, and from various social media platforms.  Investigators conduct the undercover purchases of narcotics to assist in the effort to identify the suspects operating such illicit sites.

7.      The facts and information contained in this affidavit are based on, among other things, my knowledge and observations, my training and experience, evidence obtained through search warrants, subpoenas, undercover purchase of illegal narcotics, and information from witnesses and other law enforcement personnel.

8.      I intend this affidavit to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.  Except where otherwise indicated, communications are reproduced in summary and in part. Where dates, figures, times, and calculations are set forth in this affidavit, they are approximate, unless noted otherwise.

9.      On October 8, 2021, the Honorable Jeremy D. Peterson, Magistrate Judge for the Eastern District of California, signed a seizure warrant for a JPMorgan Chase Bank, N.A., checking account belonging to HOSNER upon finding probable cause that he and others have sold and distributed illegal narcotics on the dark web and laundered the criminally derived proceeds, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance).  There is probable cause to believe The Asset is proceeds of the sale and distribution illegal narcotics and constitutes proceeds of specified unlawful activity – specifically 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance). The affidavit supporting the seizure is attached and is fully incorporated by reference as **Attachment A**.

## II.      SEIZURE AND FORFEITURE AUTHORITY

10.      18 U.S.C. § 981(a)(1)(A) subjects to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of section 18 U.S.C. §§ 1956, 1957, and 1960, or any property traceable to such property.

11.      18 U.S.C. § 981(a)(1)(C) subjects to forfeiture to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to an offense constituting "a specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7).  Section 1956(c)(7) states that "specified unlawful activity" includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1). Offenses listed in 18 U.S.C. § 1961(1) include 21 U.S.C. §§ 846 and 841(a)(1), among other violations.

12.      Pursuant to 18 U.S.C. § 981(b)(3), and notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against property may be filed and may be executed in any district in which the property is found.

13.      18 U.S.C. § 981(b) generally provides that any property subject to forfeiture under

manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

### III.    NEW PROBABLE CAUSE ASSOCIATED TO "THE ASSET"

14.    As set forth in ¶35 in Attachment A, according to JPMorgan Chase Bank, N.A. records, on June 10, 2020, HOSNER opened a checking account (account number 623081319). According to JPMorgan Chase Bank, N.A. records, between May 4, 2021 and August 9, 2021, $826,918.83 was deposited into the HOSNER's checking account (ending in #1319) of suspected specified unlawful activity proceeds from the selling of illegal narcotics on ToRReZ, a dark web marketplace, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance).

15.    The deposits totaling $826,918.83 into HOSNER's checking account (ending in #1319) came from Coinbase from the sale of his Bitcoin. Based on my training and experience investigating dark web cases, Coinbase is an online public platform that allows individuals to buy and sell virtual currency such as Bitcoin. Furthermore, based on my training and experience investigating dark web cases, vendors who sale illegal narcotics and contraband on the dark web attempt to conceal their drug proceeds by receiving Bitcoin and other forms of virtual currency.[1] Vendors on the dark web such as HOSNER need to convert their Bitcoin to fiat and therefore use companies such as Coinbase. There is probable cause to believe the Bitcoin that HOSNER sold through Coinbase were his drug proceeds from operating on the dark web.

16.    According to CarMax records, on July 29, 2021, HOSNER purchased The Asset from the CarMax auto dealership located at 73450 Dinah Shore Drive, Palm Desert, California, for $35,998. According to CarMax records, HOSNER made a down payment of $28,000 consisting of a JPMorgan Chase Bank, N.A. Cashier's Check #9550614640, made payable to CARMAX, in violation of 18 U.S.C. § 1957 (Engaging in Monetary Transaction in Property Derived From Specified Unlawful Activity). HOSNER financed the remainder of the purchase price of the vehicle through CarMax Business Services, LLC.

17.    According to JPMorgan Chase Bank, N.A. records, on July 29, 2021, HOSNER debited his checking account number 623081319 in the amount of $28,000 and he obtained the JPMorgan Chase Bank, N.A. Cashier's Check #9550614640, made payable to CARMAX. An analysis of HOSNER's JPMorgan Chase Bank, N.A. checking account number 623081319 on July 29, 2021 revealed one hundred percent of the money in the account at the time the $28,000 Cashier's Check was obtained had been transferred from HOSNER's Coinbase account.

---

[1] As set forth in ¶ numbers 22-25 in Attachment A, law enforcement paid HOSNER Bitcoin for the purchase of counterfeit Oxycodone during four undercover buys.

18. Based on the above, it is my belief that the foregoing and remaining funds on hand in HOSNER's JPMorgan Chase Bank, N.A., bank account number 623081319 on July 29, 2021, were suspected specified unlawful activity proceeds from the selling of illegal narcotics on ToRReZ, a dark web marketplace, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance) and 18 U.S.C. § 1957 (Engaging in Monetary Transaction in Property Derived From Specified Unlawful Activity).  I have probable cause to believe these funds were used to purchase the below described asset which is subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).  I hereby respectively request a seizure warrant be issued for:

> 2021 Chevrolet Silverado 1500 Custom Truck, VIN: 1GCRWBEK4MZ163537, California license number 26288D3, registered to Devlin Takeoka Hosner.

/s/
_____
Christopher S. Fitzpatrick
Special Agent, IRS-CI

Reviewed and approved as to form

/s/ Kevin C. Khasigian
Kevin C. Khasigian
Assistant U.S. Attorney

Sworn before me and signed telephonically
on this  20th  day of October 2021 at 1:00 pm

_____
Hon. Carolyn K. Delaney
United States Magistrate Judge

4

# Attachment A

AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# United States District Court

### EASTERN District of CALIFORNIA



FILED

Oct 8, 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)* | **APPLICATION FOR A WARRANT TO SEIZE<br>PROPERTY SUBJECT TO FORFEITURE** |

All funds maintained at JPMorgan Chase Bank,
N.A. account number 623081319, held in the name
of Devlin Hosner, up to and including the sum of
$214,842.60.

CASE NUMBER:   2:21-sw-0784 JDP

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Eastern District of CALIFORNIA is subject to forfeiture to the United States of America (*describe the property*):

All funds maintained at JPMorgan Chase Bank, N.A. account number 623081319, held in the name of Devlin Hosner, up to and including the sum of $214,842.60.

The property is subject to seizure pursuant to 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 984, concerning violations of 21 U.S.C. §§ 846 and 841(a)(1).

The application is based on these facts:

**See attached affidavit.**

☒ Continued on the attached sheet.

/s/ Christopher Fitzpatrick
*Applicant's signature*

Christopher S. Fitzpatrick, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed telephonically.

October 8, 2021
Date

Sacramento, California
City and State

Jeremy D. Peterson, U.S. Magistrate Judge
*Judge's signature*

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

I, Christopher Scott Fitzpatrick, having been duly sworn, state as follows:

## I.        INTRODUCTION AND AGENT BACKGROUND

1.        I make this affidavit in support of an application authorizing a seizure warrant for forfeiture of the following asset under Rule 41 of the Federal Rules of Criminal Procedure:

> All funds maintained at JPMorgan Chase Bank account number 623081319, held in the name of Devlin Hosner, up to and including the sum of $214,842.60 ("The Asset").

2.        Based on my training and experience and the facts set forth in this affidavit, I submit there is probable cause that Devlin HOSNER ("HOSNER") and others have sold and distributed illegal narcotics on the dark web and laundered the criminally derived proceeds, in violation of 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance).  There is probable cause to believe The Asset is proceeds of the sale and distribution illegal narcotics and constitutes proceeds of specified unlawful activity – specifically 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance), and thus is subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C) and 984.

3.        I am a Special Agent of the Department of Treasury, Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been since September 2001.  I am currently assigned to the IRS-CI Sacramento Office and I am charged with investigating drug trafficking and money laundering activities in the Eastern District of California, and elsewhere.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests for federal felony offenses.  Additionally, I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request seizure warrants.

4.        I was trained at a Federal Law Enforcement Training Center located in Glynco, Georgia.  During my training, I received special training in Money Laundering, including but not limited to, Title 18 United States Code Sections 1956 and 1957.  I have also received special training in Specified Unlawful Activities, including but not limited to, Title 21 United States Code Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively.  I have also spoken to and worked with experienced federal, state, and municipal agents and narcotics officers regarding the methods and means employed by drug manufacturers and drug traffickers.

5.        During the course of my employment as an IRS-CI Special Agent, I have participated in numerous criminal investigations.  I have participated in executing numerous Federal and State search warrants involving the aforementioned listed controlled substances, the seizure of narcotics-related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances, and the money laundering of the criminally derived proceeds.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, various types of infiltration, including undercover agents, informants, and cooperating sources.  Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I am familiar with the methods used by drug traffickers to smuggle and safeguard controlled substances, to

6.      I am part of the Northern California Illicit Digital Economy ("NCIDE") task force comprised of personnel from the Drug Enforcement Administration (DEA), Homeland Security Investigations ("HSI"), the Federal Bureau of Investigation ("FBI"), the United States Postal Inspection Service ("USPIS"), and IRS-CI.  As a function of this task force, investigators regularly purchase narcotics utilizing both digital and fiat currencies, from the persons operating and illegally selling narcotics on the "clear" portion of the internet, from the "dark" portion of the internet, and from various social media platforms.  Investigators conduct the undercover purchases of narcotics to assist in the effort to identify the suspects operating such illicit sites.

7.      The facts and information contained in this affidavit are based on, among other things, my knowledge and observations, my training and experience, evidence obtained through search warrants, subpoenas, undercover purchase of illegal narcotics, and information from witnesses and other law enforcement personnel.

8.      I intend this affidavit to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Except where otherwise indicated, communications are reproduced in summary and in part. Where dates, figures, times, and calculations are set forth in this affidavit, they are approximate, unless noted otherwise.

## II.      SEIZURE AND FORFEITURE AUTHORITY

9.      18 U.S.C. § 981(a)(1)(A) subjects to forfeiture to the United States any property, real or personal, involved in a transaction or attempted transaction in violation of section 18 U.S.C. §§ 1956, 1957, and 1960, or any property traceable to such property.

10.      18 U.S.C. § 981(a)(1)(C) subjects to forfeiture to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to an offense constituting "a specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7).  Section 1956(c)(7) states that "specified unlawful activity" includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1). Offenses listed in 18 U.S.C. § 1961(1) including 21 U.S.C. §§ 846 and 841(a)(1), among other violations.

11.      18 U.S.C. § 984 provides that, where property involved in the forfeiture action is cash, monetary instruments in bearer form, or funds deposited in an account in a financial institution, it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture, and it shall not be a defense that the funds involved in the offense have been removed and replaced with identical funds.  The forfeiture action involving the funds that is the basis of this violation must have occurred within the last one year of the offense and will be based on forfeiture of proceeds of illegal activity under 18 U.S.C. § 981(a)(1)C).

12.      Pursuant to 18 U.S.C. § 981(b)(3), and notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against property may be filed and may be executed in any district in which the property is found.

13.      18 U.S.C. § 981(b) generally provides that any property subject to forfeiture under 18 U.S.C. § 981(a) may be seized by the Attorney General pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

### III.     TECHNICAL BACKGROUND

14.     Digital currency (also known as crypto-currency) is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e. currency created and regulated by a government).  Digital currency exists entirely on the Internet and is not stored in any physical form.  Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.  Digital currency is not illegal in the United States and may be used for legitimate financial transactions.  However, digital currency is often used for conducting illegal transactions, such as the sale of controlled substances.  Bitcoin[1] is a type of digital currency.  Bitcoin payments are recorded in a public ledger that is maintained by peer-to-peer verification and is thus not maintained by a single administrator or entity.  Individuals can acquire Bitcoins either by "mining" or by purchasing Bitcoins from other individuals.  An individual can "mine" for Bitcoins by allowing his/her computing power to verify and record the Bitcoin payments into a public ledger.  Individuals are rewarded for this by being given newly created Bitcoins.

15.     An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker.  Such transactions can be done on any type of computer, including laptop computers and smart phones.

16.     Bitcoins can be stored in digital "wallets."  A digital wallet essentially stores the access code that allows an individual to conduct Bitcoin transactions on the public ledger.  To access Bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key").  The public address can be analogized to an account number while the private key is like the password to access that account.

17.     Even though the public addresses of those engaging in Bitcoin transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded.  If, however, a real individual or entity is linked to a public address, it would be possible to determine what transactions were conducted by that individual or entity.  Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

18.     Through the dark web or darknet, i.e. websites accessible only through encrypted means, individuals have established online marketplaces, such as the Silk Road, for narcotics and other illegal items.  These markets often only accept payment through digital currencies, such as Bitcoin.  Accordingly, a large amount of Bitcoin sales or purchases by an individual is often an indicator that the individual is involved in narcotics trafficking or the distribution of other illegal items.  Individuals intending to purchase illegal items on Silk Road-like websites need to purchase or barter for Bitcoins.  Further, individuals who have received Bitcoin as proceeds of illegal sales on Silk Road-like websites need to sell their Bitcoin to convert them to fiat (government-backed) currency.  Such purchases and sales are often facilitated by peer-to-peer Bitcoin exchangers who advertise their services on websites designed to facilitate such transactions.

19.     Dark web sites, such as Silk Road, AlphaBay, Empire, and SamSara, operate on "The

---

[1] The value of Bitcoin fluctuates with supply and demand, much like any other currency, and it can often be volatile.  Near the beginning of this investigation, on or around December 10, 2019, one Bitcoin was worth approximately $7,230 USD.  In mid-April 2021, Bitcoin was valued as high as nearly $65,000 per Bitcoin, but, at the time of writing, one Bitcoin is worth approximately $55,000 USD.

Onion Router ("TOR") network. The TOR network is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users. TOR likewise enables websites to operate on the network in a way that conceals the true IP addresses of the computer servers hosting the websites, which are referred to as "hidden services" on the TOR network. Such "hidden services" operating on TOR have complex web addresses, which are many times generated by a computer algorithm, ending in ".onion" and can only be accessed through specific web browser software designed to access the TOR network.

## IV. FACTS ESTABLISHING PROBABLE CAUSE

### A. Background Investigation of "IGOGRRAAWWR" and Identification of Devlin HOSNER as "IGOGRRAAWWR"

20.     As set forth above, I am part of the NCIDE Task Force composed of personnel from DEA, HSI, FBI, USPIS, and IRS-CI. As a function of this task force, investigators regularly purchase narcotics utilizing digital currency from persons illegally selling narcotics on the "clear" portion of the internet, as well as from those selling from the "dark" portion of the internet, and from various social media platforms. Investigators conduct the undercover purchases of narcotics to identify suspects operating such illicit sites.

21.     On approximately May 2, 2021, the NCIDE task force opened a joint investigation of a user identifying himself as "IGOGRRAAWWR," a dark web vendor suspected of mailing controlled substances via the United States Postal Service (USPS). IGOGRRAAWWR offered products for sale via a vendor site on a dark web marketplace for illicit sales known as ToRReZ. IGOGRRAAWWR's site offered various quantities of counterfeit pressed Oxycodone and stolen credit card information. Over the course of this investigation, undercover agents purchased various quantities of counterfeit pressed Oxycodone from IGOGRRAAWWR. Based upon these undercover purchases by agents, and by using various investigative techniques, law enforcement was able to identify HOSNER as the dark web vendor IGOGRRAAWWR on the marketplace ToRREZ.

### B. Undercover Purchases of Illegal Narcotics from IGOGRRAAWWR (HOSNER)

22.     During the course of the investigation, law enforcement made undercover purchases of counterfeit pressed Oxycodone from IGOGRRAAWWR on the dark web marketplace known as ToRReZ. On May 2, 2021, a member of the NCIDE Task Force, operating in an undercover capacity, conducted a purchase of 200 counterfeit Oxycodone pills from IGOGRRAAWWR. The undercover purchase was conducted utilizing Bitcoin for the payment of the illegal narcotics. The agent requested the illegal narcotics to be mailed to an undercover address controlled by law enforcement. On May 4, 2021, "IGOGRRAAWWR" mailed the undercover purchase via United Parcel Service bearing tracking number 1Z3452XY0291864086 from the Palm Springs, California area. On May 6, 2021, the parcel was delivered to an address controlled by law enforcement. On May 7, 2021, law enforcement opened the parcel. Inside the parcel were 22 grams (includes packaging weight) of counterfeit pressed Oxycodone pills.

23.     On May 31, 2021, a member of the NCIDE Task Force, operating in an undercover capacity, conducted a purchase of 35 counterfeit Oxycodone pills from IGOGRRAAWWR. The undercover purchase was conducted utilizing Bitcoin for the payment of the illegal narcotics. The agent requested the illegal narcotics to be mailed to an undercover address controlled by law enforcement. On June 2, 2021, "IGOGRRAAWWR" mailed the undercover purchase via USPS Priority Parcel Number 7700 0001 8254 60 from the La Quinta, California post office. On June 4, 2021, the parcel was

delivered to an address controlled by law enforcement. On July 2, 2021, law enforcement opened the parcel. Inside the parcel were 5 grams (includes packaging weight) of counterfeit pressed Oxycodone pills.

24.     On July 19, 2021, a member of the NCIDE Task Force, operating in an undercover capacity, conducted a purchase of 10 counterfeit Oxycodone pills from IGOGRRAAWWR. The undercover purchase was conducted utilizing Bitcoin for the payment of the illegal narcotics. The agent requested the illegal narcotics to be mailed to an undercover address controlled by law enforcement. On July 21, 2021, "IGOGRRAAWWR" mailed the undercover purchase via USPS Priority Parcel Number 9205 5901 7554 7700 from the Palmdale, California post office. On July 23, 2021, the parcel was delivered to an address controlled by law enforcement. On August 11, 2021, law enforcement opened the parcel. Inside the parcel were 2 grams (includes packaging weight) of counterfeit pressed Oxycodone pills.

25.     On September 2, 2021, a member of the NCIDE Task Force, operating in an undercover capacity, conducted a purchase of 300 counterfeit Oxycodone pills from IGOGRRAAWWR. The undercover purchase was conducted utilizing Bitcoin for the payment of the illegal narcotics. The agent requested the illegal narcotics to be mailed to an undercover address controlled by law enforcement. On September 3, 2021, "IGOGRRAAWWR" mailed the undercover purchase via USPS Priority Parcel Number 9270 1901 7554 7700 0002 1721 05 from the Palmdale, California post office. On September 7, 2021, the parcel was delivered to an address controlled by law enforcement. On September 10, 2021, law enforcement opened the parcel. Inside the parcel were 34 grams (includes packaging weight) of counterfeit pressed Oxycodone pills.

### C. "First Arrest" of HOSNER - Coachella Valley Narcotics Task Force

26.     On September 8, 2021, members of the Coachella Valley Narcotics Task Force executed a narcotics search warrant at a residence located in Palm Desert rented by HOSNER.[2] The search warrant had been authorized by a Riverside Superior Court Judge. Incident to the search, HOSNER and his girlfriend were arrested. Law enforcement seized over 300 grams of suspected Oxycodone Hydrochloride 30 mg or fentanyl pills, narcotic packaging, pay/owe documents, a pill counter, and mail envelopes. Law enforcement had issues breaching the door of the residence while attempting to make entry. Because of this, HOSNER and his girlfriend attempted to destroy suspected Oxycodone Hydrochloride 30 mg or fentanyl pills.

27.     Incident to HOSNER being arrested, he consented to be interviewed by law enforcement. Prior to any questions, HOSNER was read his Miranda Rights. HOSNER told the law enforcement officer that he understood his rights and he was willing to answer questions without an attorney present. HOSNER admitted to attempting to destroy evidence while law enforcement attempted to make entry into his residence. HOSNER estimated he had up to ten thousand pills (suspected Oxycodone Hydrochloride 30 mg or fentanyl pills) prior to destroying a large percentage of them. HOSNER admitted to mailing illegal narcotics through the USPS. HOSNER stated he had been selling illegal narcotics for the past year.

28.     At unknown date, HOSNER was released from custody.

---

[2] The Coachella Valley Narcotics Task Force was unaware of a federal investigation being conducted by members of the Northern California Illicit Drug Economy Task Force of HOSNER and others.

29.     On October 2, 2021, Deputies with the Riverside County Sheriff's Department responded to a 911 call of subject armed with a weapon, at the Mediterra Apartments #313, located at 43100 Palm Royale, La Quinta, California.  The caller stated he had second-hand information from a neighbor that their neighbor at unit #313 had a gun on the back side of his pants.  Upon arrival, multiple Deputies made contacted with the subjects from unit #313.

30.     A total of four occupants exited the apartment and were detained pending further investigation. The occupants were HOSNER who lives at apartment #313 and three other adult individuals.  HOSNER gave consent to Deputies to search his apartment for any guns.  Deputies located a "ghost" 9mm handgun (no serial number) in the laundry room of the apartment.  While searching for additional guns, deputies located a baggie containing approximately 10 small green round pills with the imprint of "M30" inside a trash can in the master bedroom.  Based on the training and experience of a Deputy present, it was believed the pills were Oxycodone Hydrochloride pills, laced with fentanyl.  Deputies also located several narcotics packaging throughout the apartment, operable digital scales, two zip lock bags containing a green powder substance on top of the nightstand in the master bedroom.  HOSNER told a Deputy that he believed the powder was fentanyl.  Deputies also located and seized JPMorgan Chase Bank, N.A. Cashier's Check Number 5007647846, dated September 28, 2021, in the amount of $214,842.60, made payable to Devlin HOSNER, 43100 Palm Royal Drive, Apartment #313, La Quinta, CA 92253-7993.  HOSNER told a Deputy the JPMorgan Chase Bank, N.A. Cashier's Check Number 5007647846 was issued to him because JPMorgan Chase Bank, N.A. had closed his bank account.[3]

31.     Inside the closet of the master bedroom, Deputies located three safes.  HOSNER gave a Deputy consent to search the safes for any guns.  One safe contained empty narcotics packages and an operable digital scale.  Although HOSNER gave a Deputy consent to search the additional safes, HOSNER did not have the key or proper combination to open the safes.  The two safes were later taken as evidence.  A Deputy subsequently asked HOSNER if he would sign a consent to search form and at which point HOSNER read the form and declined.  The deputies stopped their search.  HOSNER was subsequently arrested for possession of narcotics for sale and a second occupant inside the apartment was arrested for possession of a firearm.

### E.  Coinbase Records Associated to HOSNER

32.     According to Coinbase records, on March 31, 2021, HOSNER opened a Coinbase account.  Coinbase is an online cryptocurrency exchange where individuals can purchase/sell (exchange) various types of cryptocurrencies such as Bitcoin.  According to Coinbase records, between April 29, 2021 and August 15, 2021[4], HOSNER sold in excess of $800,000 worth of Bitcoin and converted the Bitcoin to fiat.  According to Coinbase records, the fiat was initially only transferred to a PayPal account associated to HOSNER.  As discussed in greater detail below, this eventually changed whereby HOSNER directed the fiat to be transferred directly from his Coinbase account to a checking account that HOSNER held at JPMorgan Chase Bank, N.A.

---

[3] As set forth in greater detail below, according to a JPMorgan Chase Bank, N.A. investigator, on September 28, 2021, the bank closed HOSNER's bank account number 623081319 (The Asset), held in Devlin HOSNER.  Due to the bank closing the bank account, a cashier's check in the amount of $214,842.60 was issued to HOSNER.  The dollar amount of the cashier's check represented HOSNER's bank account balance in the account on September 28, 2021, when the bank account was closed.

[4] Law enforcement only has records for HOSNER's Coinbase account up until August 15, 2021.

33.  ... proprietary blockchain investigative tool, the analyst was able to trace some of the Bitcoin deposits that had been made into HOSNER's Coinbase account.  These Bitcoin deposits into HOSNER's Coinbase account came from the Torrez marketplace, the World Market marketplace, and the Hydra marketplace.  All three marketplaces are located on the dark web and each marketplace is known to sell illegal narcotics and other contraband.

## F.  PayPal Records Associated to HOSNER

34.  According to PayPal records, on May 4, 2021, HOSNER opened a PayPal account (ending in #2075).  According to PayPal records, between May 4, 2021 and June 23, 2021, HOSNER transferred $482,824.16 from his Coinbase account into his PayPal account (ending in #2075).  According to PayPal records, after HOSNER transferred the money from his Coinbase account and into his PayPal account, HOSNER subsequently transferred the money ($482,824.16) into his JPMorgan Chase Bank, N.A. checking account number 623081319 (The Asset).

## G.  JPMorgan Chase Bank Records Associated to HOSNER

35.  According to JPMorgan Chase Bank, N.A. records, on June 10, 2020, HOSNER opened a checking account (account number 623081319) (The Asset).  According to JPMorgan Chase Bank, N.A. records, between May 4, 2021 and August 9, 2021[5], $826,918.83[6] was deposited into the HOSNER's checking account (ending in #1319) of suspected specified unlawful activity proceeds from the selling of illegal narcotics on ToRReZ, a dark web marketplace, in violation of 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance).  The last known bank account balance in HOSNER's JPMorgan Chase Bank, N.A. account number 623081319 was $203,084.35 on August 9, 2021.

## H.  JPMorgan Bank, N.A. Cashier's Check Number 5007647846, dated September 28, 2021, in the amount of $214,842.60, made to Devlin Hosner

36.  As set for above in ¶ 30, a deputy with the Riverside County Sheriff's Department seized from HOSNER incident to a consent search and to his second arrest on October 1, 2021, JPMorgan Chase Bank, N.A. Cashier's Check Number 5007647846, dated September 28, 2021, in the amount of $214,842.60, made payable to Devlin HOSNER.  According to a JPMorgan Chase Bank, N.A. investigator, on September 16, 2021, the bank started the internal process of closing HOSNER's JPMorgan Chase Bank, N.A. account number 623081319, held in the name of Devlin HOSNER (The Asset).  According to a JPMorgan Chase Bank, N.A. investigator, on September 28, 2021, JPMorgan Chase Bank, N.A. officially closed HOSNER's checking account number 623081319 (The Asset).  The bank asked HOSNER if he wanted the balance in his bank account ($214,842.60) to be wired to another bank account at a different financial institution or have a cashier's check issued to him.  According to a

---

[5] Law enforcement only has records for HOSNER's JPMorgan Chase Bank account (ending in #1319) up until August 9, 2021.

[6] The figure $826,918.83 ($482,824.16 + $344,094.67 ) was derived by the following.  As set forth in ¶31, between May 4, 2021 and June 23, 2021, HOSNER transferred $482,824.16 from his Coinbase account into his PayPal account (ending in #2075).  This money was subsequently transferred from HOSNER's PayPal account (ending in #2075) into his JPMorgan Chase Bank, N.A. checking account (ending in #1319).  Between June 23, 2021 and August 9, 2021, $344,094.67 was transferred from HOSNER's Coinbase account directly into his JPMorgan Chase Bank, N.A. checking account (ending in #1319).  In or about June 23, 2021, HOSNER stopped using his PayPal account to receive his Coinbase proceeds and he subsequently deposited his Coinbase proceeds directly into his JPMorgan Chase Bank, N.A. account, thereby bypassing his PayPal account.

a result of this decision by HOSNER, on September 28, 2021, JPMorgan Chase Bank, N.A. issued cashier's check Number 5007647846, in the amount of $214,842.60, made payable to Devlin HOSNER.

37.     In anticipation of this seizure warrant, on October 4, 2021, I asked a JPMorgan Chase Bank, N.A. investigator if the bank could stop payment on JPMorgan Chase Bank, N.A. cashier's check number 5007647846, in the amount of $214,842.60, made payable to Devlin HOSNER. The purpose of this request was that I had grave concerns even though the cashier's check was in the custody and control of the Riverside County Sheriff's Department, HOSNER could walk into a JPMorgan Chase Bank, N.A. branch and report the cashier's check lost or stolen, resulting in a new cashier's check being issued to him. The JPMorgan Chase Bank, N.A. investigator honored my request and stopped payment on the cashier's check. The investigator stated the money tied to the cashier's check was swept into a general ledger bank account held at JPMorgan Chase Bank, N.A. pending a seizure warrant served on the bank for the funds.

## IV.     CONCLUSION

38.     Based on the above, it is my belief that the forgoing evidence shows the funds deposited into HOSNER's JPMorgan Chase Bank, N.A., bank account number 623081319, between May 4, 2021 and August 9, 2021, totaling $826,918.83 were suspected specified unlawful activity proceeds from the selling of illegal narcotics on ToRReZ, a dark web marketplace, in violation of 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance) - and are thus subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 984. I hereby respectively request a seizure warrant be issued for:

> All funds maintained at JPMorgan Chase Bank account number 623081319, held in the name of Devlin Hosner, up to and including the sum of $214,842.60.[7]

_/s/ Christopher Fitzpatrick_
Christopher S Fitzpatrick
Special Agent, IRS-CI

Reviewed and approved as to form

/s/ Kevin C. Khasigian
Kevin C. Khasigian
Assistant U.S. Attorney

Sworn before me and signed telephonically
on this __8__ day of October 2021.

Hon. Jeremy D. Peterson
United States Magistrate Judge

---

[7] 18 U.S.C. § 984 provides that proceeds obtained from 21 U.S.C. §§ 846, 841(a)(1) (Conspiracy to Distribute, and to Possess with Intent to Distribute, a Controlled Substance) that occurred within the last one year of the offense are subject to forfeiture. However, I am only seeking a seizure warrant for $214,842.60 which is the known ending balance in HOSNER's JPMorgan Chase Bank, N.A. account number 623081319 when the account closed on September 28, 2021.

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture

# United States District Court

### __EASTERN__ District of __CALIFORNIA__

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>2021 Chevrolet Silverado 1500 Custom Truck, VIN: 1GCRWBEK4MZ163537, California license number 26288D3. | **WARRANT TO SEIZE PROPERTY**<br>**SUBJECT TO FORFEITURE**<br><br>CASE NUMBER:   2:21-sw-0809 CKD |

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of CALIFORNIA be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

**2021 Chevrolet Silverado 1500 Custom Truck, VIN: 1GCRWBEK4MZ163537, California license number 26288D3.**

The property is subject to seizure pursuant to 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property within 14 days in the daytime 6:00 a.m. to 10:00 p.m.  You must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to CAROLYN K. DELANEY or Any U.S. Magistrate Judge in the Eastern District of California.

October 20, 2021 at 1:00 pm
_____
Date and Time Issued

Sacramento, California
_____
City and State

_____
*Judge's signature*

Carolyn K. Delaney, U.S. Magistrate Judge
_____
*Printed name and title*

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture (Page 2)

## RETURN

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date.

_____          _____
U.S. Judge or Magistrate                                                    Date